First case on our call today is agenda number 13, case number 106052. In re E.B. and J.B. minors, people of the state of Illinois versus Phyllis Burgund. Ms. Murphy, you may proceed. Understanding that this is a one-sided argument, there's a 15-minute time limit on the argument. Yes, thank you. With that, good morning, and you may proceed. Good morning. Good morning, Your Honors. May it please the Court, Rachel Hoover Murphy, Assistant Attorney General, appearing on behalf of the people of the state of Illinois. In this case, two children were adjudicated dependent through no fault of their parents and removed from the custody of their mother, who's the respondent here. A year and a half later, after she failed to maintain a reasonable degree of interest or concern for their welfare, she was found unfit, and the Court determined that it would be in the children's best interests to terminate her parental rights. The appellate court majority reversed, reading Section 2-41C of the Juvenile Court Act to bar termination of parental rights following an adjudication of no-fault dependency. We ask this Court to reverse, because both the language and the purpose of Section 2-41C show the legislature's intent to allow such termination when it is in the best interests of the child. I'd like to start with the statutory language, which is located on page 3 of our opening brief. Contrary to the appellate majority's reasoning, the no-fault dependency provision can reasonably be read to allow termination of parental rights when it is in the best interests of the child. That section states that those who are dependent include any minor who is without proper care through no fault, neglect, or lack of concern by his parents, provided that no order may be made terminating parental rights. Let me back up just one minute to the procedural default. The State did not raise that issue in the appellate court, did it? That's right. The appellate court determined that it hadn't been raised in the Circuit Court, but in the interest of justice, the Court would still address the issue. It was not raised by the parties in the appellate court? As far as I recall, that's correct. Turning back to the language, after stating what a dependent minor, a no-fault dependent minor, is, the statute then has two provisos. The first is that no order may be made terminating parental rights. The second is that a minor may not be removed from the custody of his or her parents for longer than six months. Having stated these provisos, the statute then clarifies that both of those are only pursuant to an adjudication under subdivision C, as opposed to under one of the other subdivisions for dependency. Ms. Murphy, doesn't nor usually indicate a second thought? Nor And if it is a second thought, why wouldn't the language that you say applies to termination, why wouldn't that apply to the second thought, namely the removal from the custody of his or her parents for longer than six months? It does apply to the second thought, but it also applies to the first thought. And let me explain why. The phrase immediately following the nor may a minor be removed for more than six months is pursuant to an adjudication as a dependent minor under this subdivision. That phrase itself logically applies to both of the provisos. So what the nor does is state first we have the proviso about termination, then we have a proviso also about the six-month limitation. The phrase following that applies to both of them. It clarifies that you can't order termination or remove a child for more than six months, but only under that dependency subdivision. So that you could order termination under subdivision B, which is if the parent has a physical or mental disability. But wouldn't you have to file a different petition for that? No, you would not. If a child is a judge dependent under A, B, or D of Section 2-41, you would not need to re-adjudicate the wardship in order to terminate parental rights. But wouldn't the findings be different? I'm sorry, the findings of? The first petition for wardship under dependency versus termination. That's right. Whenever you go to termination, you have to then first find the parent to be unfit. And that is whether the child has been adjudged a ward because he was neglected or dependent for lack of a parent or because the parent has a mental or physical disability. Under any of those reasons for wardship, before you can terminate parental rights, you have to find the parent unfit by clear and convincing evidence. And then you have to find that it's in the best interest of the child to terminate parental rights. So what the legislature did by amending this statute in 1993 is to put children adjudged wards under Subdivision C on equal footing with those who are adjudged wards for any of the other reasons under 2-41 or because they are neglected. None of those require an initial finding of parental fault. And yet if the parent, if their behavior deteriorates over the course of the wardship, then their rights can be terminated. And so as Justice Cook stated in his dissent, why is a parent's behavior not under scrutiny and subject to termination regardless of the avenue by which he became a ward if that is what is in the child's best interest? And this gets into the purpose of the act, which if you accept that the statutory language can be read reasonably, just as reasonably in the way that we interpret it as the appellate majorities, then you're left with an ambiguous statute and you need to look at the purpose of the act. Let's talk about that. Assuming that the court finds an ambiguity, the language of the sponsor seems to point to the portion that has to do with the removal from the parents in the six-month provision. Let me see if I can find his language. The sponsor of the bill amending the statute stated the bill, quote, or allows a minor to be removed from his parents if it is determined to be in the best interest of the minor. So although you even cite to that language in the language of the sponsor of the bill, but doesn't that quote remove from his parents' language point to a six-month portion of the statute and not the prohibition on termination of parental rights? No, Your Honor. I think it can reasonably be read also to encompass the termination. The term of art of termination or removal, it may have been that Senator Bockhausen, who was the Senate sponsor of the bill, wasn't using the technical terms. But that statement ---- Well, that's very important, isn't it? I mean, the word removal is also the portion of the statute in question. I mean, the word removed is used in the statute. Yes. And the sponsor uses the word removed, and nowhere in his remarks does he talk about the termination provision. So isn't that supportive of the fact that if there is any ambiguity, legislative history would point to the fact that it was modifying the six-month removal and not termination of parental rights? It's true that both the House and the Senate in their debates focused on the six-month provision. But the fact that they did not mention the prohibition on termination is not indicative that they did not also intend to amend that part of the statute. There is ---- The word removal goes to the children being removed, and oftentimes there's removal without termination for long periods of time. Yes. So it really doesn't have anything to ---- Removal has nothing to do with ---- And you removed ---- Children are removed all the time pending investigation. So it really doesn't have anything to do with the ultimate, which would be termination of parental rights. I agree, Your Honor. I agree that the Senate and the House were focused on the six-month provision. But the fact that they did not also have a long debate about changing the prohibition on termination does not mean that that was not their intent. Because if you look at the overall purpose of the act, that's what I would get back to here. Section 1-2 ---- Counsel, if I may, you're a stalwart with your argument. But I do want to just for a moment get past that, just hypothetically say that we might agree with you and say that the best interest standard contained within that phrase doesn't apply to termination. I'm sorry, does ---- Does not apply to termination. It only applies to the six-month standard. So that if you agree with the appellate majority ---- That's correct. What would be the next thing that would happen with this child? The children would, in order for termination to occur, the state would have to start over again and re-adjudicate the wardship under one of the other subdivisions of dependency or under neglect. A step you say that you properly avoided by just going directly to the other standards. Yes, Your Honor. And making the child stay in a state of limbo while it's now been nearly three years since the children were adjudicated wards. And to say that the state has to go back and start over again and re-adjudicate wardship puts them into uncertainty and goes against the legislature's goal of permanency. I think that's also a fair argument. But if we look at the language, and the language is clear, do we have any alternative? If you find that the language is clear, as the appellate majority did, I do not see an alternative. And you would be back, basically you would say, the 1993 amendment did not affect any change to the termination provision. And we're back in the old language before the legislature went in and added this best interest language. And under that situation, if you look at the In Re Y B case, that was what the appellate court decided there. The children are then put back at square one. And you have lengthy new wardship proceedings. And in this case... Ms. Murphy, there are competing interests, right? I mean, this would be allowing, if we went along with your language, it would be allowing termination proceedings in a case where there's been no allegation of fault, right? So, I mean, the parents' rights, the time for the child, I mean, in answering Justice Fitzgerald's question, though, you indicate the state is not left without a remedy. I mean, you could file a neglect petition, right, and get to the same point, presumably the same point that you are right now. We could file a neglect petition. I disagree that it would be getting to the same point where we are now. By the time that is adjudicated and sent through and a new service plan is put in place and then we get down the road to termination of parental rights, that's another two years down the line. Ms. Murphy, the word you just used now is permanency or service plan. Now, isn't the removal of the child for dependency the focus of trying to keep the family intact and providing services, so the goal is different under dependency versus you're now saying the goal for termination. The termination goal is totally different. So the prove-up of trying to terminate rights would not be for the reunification of the family. It would be totally something different. Isn't that correct? Yes, that's right. Isn't that why you should have to file a new petition for termination? Well, you always have to file a new petition for termination. The goal during the wardship is, as you state, reunification. And that was attempted here, and that is attempted under any of the dependency subdivisions. But at the point where the parent no longer shows a reasonable degree of concern for the child's welfare or under the other grounds for unfitness, if they haven't made reasonable efforts to the return of the child or to correct the conditions that were the reason for the child's removal, at that point the state can file a petition for termination and would have to prove the parent unfit by clear and convincing evidence. And what we're saying is, in amending the statute in 1993, the legislature intended to give children adjudicated wards because their parents were not at fault at first, but their parents' behavior deteriorated over the course of the wardship, which can happen under a neglect finding or under a dependency finding under one of the other subdivisions. Ms. Burvey, if we look at it from the perspective that if the court finds no ambiguity and the nor applies to the six months and not termination, I mean, it would end there. On the ambiguity, if we look to the language of the sponsor, it seems at least, that he uses the same language that would support the plain reading of the statute, that it applies to the six months. And on the third basis, which is namely the length of time it's going to take, and we're already at this point, it at least seems arguably reasonable that the legislature may not want to allow for termination where there's no allegation of fault on the side of the parents. So what exactly are you pointing to in asking us to read this the way that you've proposed? If I may. I hope you will. The purpose of the act, Your Honor, is what we're pointing to. And the fact that the best interests of the child are to be the paramount consideration. And the act is to be liberally construed in moments of ambiguity to serve the best interests of the child above all other interests. That is what we're pointing to. And the fact that the legislature went in and actively amended this statute so that the children who are in the same situation as the two here will have an opportunity expeditiously at permanency. And having permanency at the earliest opportunity is one of the stated goals of the act. That's, again, Section 1-2. That's what we point to, and that's why the legislature went in here and amended this statute. And even if we accept your interpretation, there is still required a petition alleging unfitness. There would never be a termination without an allegation and proof of unfitness. That's correct. That's correct, Your Honor. That is one of the protections that is given parents. So even a parent whose child is found dependent under the no-fault provision is not at risk of suddenly having those rights terminated. There has to be a petition for termination. The parent has to be found unfit by clear and convincing evidence. And the parents are given ample notice, as was done here. They are admonished every step of the way. You have to comply with the service plans. You have to maintain responsibility for your child. You cannot simply let the child be removed and not work actively towards maintaining your relationship with the child. Thank you, Counsel. Thank you. For these reasons, we ask the Court to reverse and affirm the Circuit Court's judgment terminating respondents' parental rights. Case number 106052 will be taken under advisement as agenda number 5.